**Affirm; Opinion Filed February 10, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00352-CV

### BRYAN TAYLOR AND MELISSA TAYLOR, Appellants
### V.
### BAYLOR SCOTT & WHITE MEDICAL CENTER-FRISCO, Appellee

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-12792**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

Appellants Bryan Taylor and Melissa Taylor appeal the trial court's judgment

granting the motions for no-evidence and traditional summary judgment filed by

appellee Baylor Scott & White Medical Center – Frisco. The Taylors contend the

trial erred by (1) granting summary judgment against them, and (2) striking an

exhibit the Taylors submitted as summary judgment evidence. We affirm.

### I. Background

This is a healthcare liability lawsuit involving spine surgery performed on

Bryan Taylor (Bryan) by Stephen Courtney, M.D., at Baylor Scott & White Medical

Center – Frisco (Baylor). The Taylors complain that Dr. Courtney performed an

unnecessary and different surgery on Bryan than had been represented.[1] Dr. Courtney owned fifty percent of Eminent Spine, LLC, a company that designed and distributed an intervertebral fusion device called "the Python." The Taylors allege that Baylor purchased, at Dr. Courtney's request, a Python device from Eminent Spine to use on Bryan. They further allege that after Dr. Courtney improperly implanted the Python devise into Bryan's back, the device migrated out of place, causing damage to surrounding tissue, permanent pain, suffering, and disfigurement. The Taylors allege that in an effort to realign the device and prevent its migration, Dr. Courtney performed a second unsuccessful surgery on Bryan, which included placement of a lumbar interbody fusion cage. As a result, Bryan required a third surgery, which was performed by a different surgeon.

On September 28, 2016, the Taylors filed suit against Baylor.[2] They alleged three negligence claims, asserting that Baylor breached its reasonable duty of care in: (1) formulating and enforcing policies and procedures to prevent excessive and unnecessary surgeries; (2) selecting and retaining the physicians that are granted staff privileges; and (3) formulating and enforcing policies and procedures for the purchase of medical devices, including spinal implants and hardware, for use in orthopedic and neurological surgeries. The Taylors also alleged that Baylor was

---

[1] Bryan was scheduled for L4-L5 microdiskectomy with possible cage and decompression to be performed by Dr. Courtney; the consent form did not include surgical fusion.

[2] The Taylors also sued Dr. Courtney, Eminent Spine, LLC, and Monitoring Concepts Management, LLC. On December 17, 2019, the trial court granted the Taylors' motion to dismiss those defendants with prejudice. The court's order further stated that Baylor remained a defendant and was not dismissed.

grossly negligent because it knew of the extreme risks involved but proceeded with conscious indifference to the rights, safety, or welfare of others. Baylor filed an answer denying the Taylors' claims.

After two years of litigation, Baylor filed its no-evidence and traditional motion for summary judgment, asserting that the Taylors had no evidence that Baylor breached applicable standards of care. The Taylors filed a response and attached summary judgment evidence that included, as Exhibit F, a deposition taken in a different lawsuit.[3] Baylor filed a motion to strike Exhibit F of the Taylors' summary judgment evidence as improper hearsay evidence. After a hearing, the trial court granted Baylor's motion to strike the Taylors' Exhibit F; the court also granted Baylor's motions for summary judgment. The trial court denied the Taylors' motion for new trial, and the Taylors filed this appeal.

## II. Discussion

The Taylors raise two issues on appeal. Their first issue, that the trial court erred in granting Baylor's motions for summary judgment, has several sub-issues. They first contend they provided more than a scintilla of evidence that Baylor breached its duty to use reasonable care in formulating and enforcing policies and procedures to prevent excessive and unnecessary surgeries in connection with physician-owned distributorships (PODs). In their second sub-issue, the Taylors

---

[3] The deposition of Dr. Courtney's former partner, Cameron Noble Carmody, M.D., was taken in *Carmody v. McMurrey*, Case No. 366-05221-2018, in the 366th Judicial District of Collin County, Texas.

contend they provided more than a scintilla of evidence that Baylor breached its duty to use reasonable care in formulating and enforcing policies and procedures for the purchase of medical devices. Third, the Taylors argue that Baylor breached its duty to use reasonable care in the selection and retention of physicians who are granted staff privileges. The Taylors' fourth sub-issue, which pertains to their assertion of gross negligence, contends that Baylor had actual subjective awareness of the risk involved but proceeded with conscious indifference to the rights, safety, or welfare of others. In their second issue, the Taylors assert the trial court erred by striking Exhibit F of their summary judgment evidence—the deposition testimony of Dr. Cameron Carmody.

## A. Admissibility of Dr. Carmody's Deposition Testimony

We begin with the Taylors' second issue. The Taylors contend the trial court erred in excluding Dr. Carmody's deposition testimony—Exhibit F of the Taylors' summary judgment evidence. We review a trial court's decision to admit or exclude summary judgment evidence under an abuse of discretion standard. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) ("We review the rendition of summary judgments de novo. But we review a trial court's decision to exclude evidence for an abuse of discretion.") (citations omitted); *Nelson v. Pagan*, 377 S.W.3d 824, 830 (Tex. App.—Dallas 2012, no pet.). We will affirm the trial court's ruling unless the court acted unreasonably or in an arbitrary manner, without regard

for any guiding rules or principles. *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 211 (Tex. 2002).

Baylor contends the trial court properly excluded the deposition testimony as inadmissible hearsay. Hearsay is testimony a witness "does not make while testifying at the current trial or hearing," which is offered "to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay is not admissible unless allowed by statute, the rules of evidence, or other rules prescribed under statutory authority. TEX. R. EVID. 802. According to Rule 801(e)(3), deposition testimony is not hearsay if the deposition was taken in the same proceeding. The rule directs us to look to Rule 203.6 of the Texas Rules of Civil Procedure for a definition of "same proceeding." *Id*. "Same proceeding" is defined to include "a proceeding in a different court but involving the same subject matter and the same parties or their representatives or successors in interest." TEX. R. CIV. P. 203.6(b). Depositions taken in different proceedings may be used, but only as permitted by the Texas Rules of Evidence. TEX. R. CIV. P. 203.6(c).

Dr. Carmody's deposition testimony was not taken in the same proceeding. It was taken in connection with a lawsuit pending before the 366th District Court of Collin County, Texas; the only parties to that suit were Dr. Carmody, Cameron Carmody, M.D., P.A., and William C. McMurrey. In the case before us, the trial court is different—the 192nd District Court of Dallas County, Texas. The parties are different—Dr. Carmody, his professional association, and McMurrey are not parties

in this case, nor are they representatives or successors in interest to any party in this case. Further, there is nothing in the record to indicate that the subject matter of Dr. Carmody's Collin County lawsuit is the same as the subject matter of this lawsuit. Clearly, Dr. Carmody's deposition was not taken in the "same proceeding" and does not meet the conditions to establish that the deponent's statement is not hearsay. *See* TEX. R. EVID. 801(e)(3).

The Taylors do not dispute Baylor's assertion that Dr. Carmody's deposition testimony was not taken in the same proceeding. Nor do they argue that Dr. Carmody's deposition testimony is admissible under any hearsay exclusion. Instead, they argue that Dr. Carmody's deposition is admissible summary judgment evidence because it is sworn testimony (albeit from another case) and because the exhibit included the sworn declaration page of the court reporter's transcript of the deposition.

The Taylors contend that court records, including testimony from other cases in other courts, may be acceptable summary judgment evidence.[4] They contend that other courts have held that transcripts of trial testimony and court records from other

---

[4] The Taylors cite the following cases: *Soefje v. Jones*, 270 S.W.3d 617, 626 (Tex. App.—San Antonio 2008, no pet.) (trial court took judicial notice of certified pleadings, documents, briefs, and testimony from prior litigation involving the same parties); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 539–40 (Tex. App.—San Antonio 2004, pet. denied) (court refused to take judicial notice of testimony from previous proceeding because transcript of testimony from prior proceeding not properly authenticated and entered into evidence); and *Escamilla v. Estate of Escamilla*, 921 S.W.2d 723, 726 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (requested testimony from first trial not properly before the trial court at the second trial because not authenticated and entered into evidence).

proceedings are admissible summary judgment evidence.[5] The Taylors urge that this Court should interpret these cases to conclude that so long as a deposition is certified, it is proper summary judgment evidence in a different proceeding. We note, however, that the Taylors' cited cases considered the admissibility of trial testimony, pleadings, or documents from a prior proceeding. None of those cases addressed the admissibility of *deposition* testimony, specifically deposition testimony from a different proceeding where the court, parties, and subject matter of the case are not the same. In addition, none of the cases addressed the admission or exclusion of hearsay testimony.

Because the record establishes that Dr. Carmody's deposition testimony is not from the same proceeding, and the deposition did not fall within any exclusion to the hearsay rule, the trial court did not abuse its discretion in excluding this evidence. *See Trantham v. Isaacks*, 218 S.W.3d 750, 755 (Tex. App.—Fort Worth 2007, pet. denied) (deposition of third party taken in unrelated lawsuit not admissible); *Romero v. Parkhill, Smith & Cooper, Inc.*, 881 S.W.2d 522, 527 (Tex. App.—El Paso 1994, writ denied) ("[S]ince Parkhill was not a party to the lawsuit for which the deposition

---

[5] The Taylors cite *Gunville v. Gonzalez*, 508 S.W.3d 547, 562–63 (Tex. App.—El Paso 2016, no pet.), in which the court concluded that plaintiffs' summary judgment evidence of testimony excerpts from a prior trial was not admissible because it was not properly authenticated. They also cite *Gardner v. Martin*, 345 S.W.2d 274, 276–77 (Tex. 1961), in which the court addressed the requirement that papers, records, or other documents from prior proceeding be certified or sworn, and *Old Republic Surety Co. v. Bonham State Bank*, 172 S.W.3d 210, 218 n.4 (Tex. App.—Texarkana 2005, no pet.), in which the court held that an uncertified trial transcript consisting entirely of unsworn statements was not admissible summary judgment evidence.

was taken, that deposition is inadmissible hearsay as to Parkhill."). We overrule the Taylors' second issue. *See Butnaru*, 84 S.W.3d at 211.

## B. Baylor's Motions for Summary Judgment

To prevail on their medical negligence cause of action, the Taylors were required to prove (a) a duty requiring Baylor to act according to applicable standards of care; (b) a breach of the applicable standards of care; (c) resulting injuries; and (d) a reasonably close causal connection between the alleged breach of care and the alleged injury. *See Blan v. Ali*, 7 S.W.3d 741, 744 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App.—Texarkana 1999, no pet.). In its no-evidence motion for summary judgment, Baylor asserted that the Taylors had no competent evidence from a qualified expert witness establishing that Baylor breached its standards of care. And in its traditional motion, Baylor asserted that its summary judgment evidence conclusively established that Baylor did not breach the standards of care. It also asserted there is no genuine issue of material fact concerning the Taylors' allegations against Baylor.

We review a trial court's ruling on a motion for summary judgment de novo. *Hillis v. McCall*, 602 S.W.3d 436, 439 (Tex. 2020). We consider the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). Where, as here, a trial

court's order does not specify the grounds for its summary judgment, we must affirm if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Id*.

When a party has moved for summary judgment on both no-evidence and traditional grounds, we generally address the no-evidence motion first. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If the nonmovant fails to produce more than a scintilla of evidence on the essential elements of a cause of action challenged by a no-evidence motion, there is no need to analyze the movant's traditional grounds for summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see* TEX. R. CIV. P. 166a(i).

To prevail on a traditional motion for summary judgment, however, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Cmty. Health*, 525 S.W.3d at 681; TEX. R. CIV. P. 166a(c). "A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment." *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

### 1. Duty to Implement and Enforce Policies and Procedures

"The test for determining whether a hospital has a duty of care and whether that duty has been breached is what an ordinary hospital would have done under the same or similar circumstances." *Mills*, 995 S.W.2d at 268. Generally, both parties

agree that hospitals have a duty to manage the care, services, competence, and quality of care and services provided at the hospital; a duty to create policies, procedures, bylaws, rules, and regulations that govern the hospital; and a duty to ensure that the policies and procedures it implemented were in fact instituted and that compliance is enforced by the hospital. *See Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 631 (Tex. App.—Fort Worth 2011, pet. denied).

### 2. Duty to Prevent Excessive and Unnecessary Surgeries

In advocating that hospitals have a duty to prevent excessive and unnecessary surgeries, the Taylors focus their complaint on those excessive and unnecessary surgeries performed by a surgeon seeking to use, and to profit from the use of, medical devices distributed by that surgeon's POD.[6] The Taylors charge Baylor with failing to implement and enforce policies to monitor and restrict its physicians from over-utilizing their own medical devices on patients to gain more profit. The Taylors urge that if Baylor had looked at Dr. Courtney's practices, it would have known that Dr. Courtney was performing unnecessary and negligent surgeries in order to use his Python medical device. They also urge that if Baylor had become aware of Dr. Courtney's unethical practices, it would have implemented its no-POD policy earlier, thus preventing Bryan's unnecessary and negligent surgeries.

---

[6] The Department of Health and Human Services Office of Inspector General (HHS OIG) describes physician owned distributorships (PODs) as physician-owned entities that derive revenue from selling, or arranging for the sale of, implantable medical devices ordered by their physician-owners for use in procedures the physician-owners perform on their own patients at hospitals or ambulatory surgical centers.

In 2011, the United States Senate Finance Committee issued a report on the newly emerging POD marketplace.[7] Concluding that clear legal guidance was needed, the Committee requested the Department of Health and Human Services Office of Inspector General (HHS OIG) to conduct an inquiry and develop recommendations for further action to address patient and program risks presented by PODs. In March 2013, the HHS OIG issued a Special Fraud Alert, identifying certain attributes and practices of PODS that it believed produced substantial fraud and abuse risk and posed dangers to patient safety. The HHS OIG also issued a targeted report addressing the prevalence and use of spinal devices supplied by PODs. In 2016, the Senate Finance Committee issued an update to its 2011 report. The 2016 report identified six primary concerns about PODs and made recommendations for addressing those concerns.[8]

In his deposition and affidavit, the Taylors' designated expert, Dr. Charles Burton, stated that Baylor had a duty to have policies that (1) identified physician owned distributorships (PODs), and (2) prohibited the hospital from purchasing any devices from PODs. Dr. Burton opined that this is the applicable standard of care for

---

[7] In the proceedings below, both parties and their experts referred to Senate Finance Committee and Department of Health and Human Services Office of Inspector General studies and reports pertaining to PODs. Baylor included these reports as part of its summary judgment evidence.

[8] The Committee's concerns included: (1) possible financial transactions that violate federal laws such as the Anti-Kickback Statute and the Stark Law; (2) inherent conflicts of interest for POD physicians when they have a financial incentive to perform surgeries; (3) overutilization leading to an increase in surgeries; (4) risk of patients receiving unnecessary medical treatment; (5) confusion in the medical community as to the legality of PODs; and (6) lack of transparency surrounding POD industry.

hospitals because "major hospital systems across the nation have well-known no-POD policies."[9] He further opined that this is the standard for hospitals because it is well known that surgeons using their own devices present an inherent conflict of interest that puts the physician's medical judgment at odds with the patient's best interests, and this conflict of interest compromises patient safety and results in unnecessary medical procedures. Dr. Burton asserted that Baylor breached the standard of care by either not having such policies in place or failing to provide effective peer-review to enforce such policies.

Baylor implemented a no-POD policy on November 22, 2016. In 2015, when Dr. Courtney performed surgery on Bryan, Baylor did not have a policy prohibiting the hospital from purchasing medical devices from PODs. However, this was not uncommon. Dr. Burton agreed that in 2013, 2014, 2015, and beyond, many hospitals did not have policies that prohibited purchasing from PODs. Baylor asserts, and Dr. Burton concedes, that PODs were not prohibited in 2015, and in fact, they are not prohibited today. Dr. Burton further concedes that in January 2015, no regulatory agency or federal law prohibited hospitals from buying products from PODs. Thus Baylor was not required by law to have a no-POD policy in 2015. And Dr. Burton's proposed standard of care would hold Baylor to a standard higher than that required by law. *See Methodist Hosp. v. German*, 369 S.W.3d 333, 342–43 (Tex. App.—

---

[9] Dr. Burton did not state when the "major hospital systems across the nation" implemented their no-POD policies.

Houston [1st Dist.] 2011, pet. denied) (expert could not claim nurses breached standard of care to "draw conclusions" from patient observations because it created standard higher than set forth in Nursing Practice Act); *Schneider v. Haws*, 118 S.W.3d 886, 889–90 (Tex. App.—Amarillo 2003, no pet.) (expert's attempt to impose upon doctor and his assistant "a standard of care greater than that compelled by law . . . constituted no evidence, as a matter of law, of the applicable standard of care").

Baylor asserts that even before implementing its no-POD policy, it properly managed conflicts of interest with its surgeons and their PODs. The HHS OIG and Senate Finance Committee made recommendations for managing conflicts of interest related to PODs and compliance with federal law. In his deposition, Dr. Burton could not point to any evidence that Eminent Spine exhibited any of the suspect characteristics identified by HHS OIG of a POD with conflicts of interest that needed to be managed. In his affidavit, Dr. Burton opined that a no-POD policy must state that the hospital will not purchase or enter into agreements for the purchase of implants, instruments or other medical devices if any purpose of the purchase is to generate or maintain referrals from a physician who has, directly or indirectly, a financial interest in the utilization of the item purchased. In his deposition, Dr. Burton agreed that he had reviewed the 2009 Agreement Relating To

Purchase of Spinal Implants between Baylor, Eminent Spine, and Dr. Courtney.[10] When asked if this agreement contained a provision stating that there was no expectation that Dr. Courtney would refer patients to Baylor in exchange for the use of his device, Dr. Burton stated that he did not recall.[11] However, he conceded that he knew of no evidence that Dr. Courtney was expected to refer patients to Baylor in exchange for Baylor's purchasing Eminent Spine products.

The Taylors did not produce evidence that Baylor's peer-review practices failed to manage conflicts of interest with respect to PODs. The 2009 Agreement between Baylor, Eminent Spine, and Dr. Courtney required that Dr. Courtney disclose to his patients, in writing, his ownership or investment interest in Baylor and in Eminent Spine. Dr. Burton acknowledged that Baylor required such a disclosure. He also acknowledged that in 2013, Baylor required Eminent Spine to confirm that such disclosures were being made. According to the record, Bryan signed a consent form that disclosed Dr. Courtney's interest in Eminent Spine less than two months before Bryan's surgery.

In addition, the Taylors presented no evidence that Dr. Courtney performed excessive and unnecessary surgeries in order to use, and profit from the use of, the

---

[10] The Agreement was produced as part of Baylor's summary judgment evidence.

[11] Paragraph 6.2 of the Agreement, titled "No Referral Obligation," states: "The parties acknowledge and agree that this Agreement does not require, and shall not be construed to require (directly or indirectly, explicitly or implicitly), Hospital to use any Products of Eminent Spine, nor does this Agreement require Physician to refer or admit any patient to or order any goods or services from Hospital or any other facility, person or service related to Hospital."

Python medical device distributed by Eminent Spine. In his deposition, Dr. Burton stated that he did not perform any analysis to compare the number of surgeries performed by Dr. Courtney before and after he began using Eminent Spine products. The Taylors' only evidence that Dr. Courtney performed excessive and unnecessary surgeries was Dr. Carmody's deposition testimony in an unrelated proceeding—evidence that the trial court struck as inadmissible hearsay. Thus, there is no evidence that Dr. Courtney performed excessive and unnecessary surgeries in order to use Eminent Spine medical devices.

In summary, the Taylors have not come forward with any evidence that Baylor had a duty to have a no-POD policy in 2015. They failed to bring forth evidence that Baylor breached its duty to manage conflicts of interest with respect to the hospital, its physicians, and their PODs. The Taylors also failed to present admissible evidence that Dr. Courtney performed unnecessary and excessive surgeries in order to utilize Eminent Spine medical devices. Once Baylor challenged the Taylors' claim that Baylor breached its duty to prevent Dr. Courtney from performing excessive and unnecessary surgeries in order to use, and profit from the use of, medical devices distributed by his POD, the Taylors had the burden to produce more than a scintilla of evidence raising a genuine issue of material fact as to those elements of their cause of action. *See Ford Motor*, 135 S.W.3d at 600. Because they failed to do so, the trial court did not err in granting Baylor's motion for no-evidence summary judgment as to this issue.

### 3. Duty to Enforce Policy for the Purchase of Medical Devices

In its motions for summary judgment, Baylor also asserted that the Taylors have no evidence that Baylor breached its standard of care by failing to comply with its policy for the purchase of medical devices. Baylor's policy states: "[r]equests for instruments, supplies, equipment and products new to Baylor Medical Center at Frisco must be justified and initially approved by the Medical Executive Committee (MEC)." The policy describes a seven-step procedure for obtaining MEC approval.

In their response, the Taylors asserted that Baylor breached the applicable standard of care by allowing Dr. Courtney to use his Python device without obtaining prior approval by the MEC. However, the Taylors did not come forward with any evidence that affirmatively shows Baylor did not comply with its policy. Instead, the Taylors assert the "evidence" in support of their claim is the absence of documentary proof that (1) the policy and procedures were followed and (2) the device received prior MEC approval. They assert that two of Baylor's witnesses—Baylor's corporate representative, Dr. Andrews, and Baylor's expert witness, Dr. Pate—agree there is no proof that Baylor followed its policy with respect to the Python device. However, the record establishes these witnesses merely stated that they personally had not seen anything to show *when* Eminent Spine went through the MEC approval process for the Python device. Dr. Pate testified that it was his understanding that Eminent Spine went through the MEC approval process before using the Python on patients at Baylor. He stated that there should be a document somewhere but he had not asked

for it. The absence of evidence of prior approval does not create some evidence that there was no prior approval. *See City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005) ("In claims or defenses supported only by meager circumstantial evidence, the evidence does not rise above a scintilla (and thus is legally insufficient) if jurors would have to guess whether a vital fact exists."). "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *Id*.

The Taylors argue that a fact issue exists because Baylor has no proof it followed the policy. However, the burden was on the Taylors to present more than a scintilla of evidence raising a genuine issue of material fact that Baylor breached its duty to comply with its policy for the purchase of new medical devices. *See* TEX. R. CIV. P. 166a(i). The Taylors failed to do so. Therefore, the trial court did not err in granting Baylor's motion for no-evidence summary judgment as to this issue.

### 4. Duty to Enforce Policy for Physician Retention

In its motions for summary judgment, Baylor argued that the Taylors had no evidence that Baylor breached the standard of care for credentialing Dr. Courtney—initially granting him privileges to practice in the hospital, and then allowing him to retain them. "In Texas, by statute, a hospital is not liable for improperly credentialing a physician through its peer review process unless the hospital acts with malice." *Romero v. KPH Consol., Inc*., 166 S.W.3d 212, 214 (Tex. 2005) (citing TEX. OCC. CODE § 160.010(b), (c)). In *Romero*, the supreme court noted that "[p]roof of malice is made more difficult in this setting because peer review communications and

–17–

proceedings are generally confidential and privileged from disclosure." *Id.* at 214–15 (citing TEX. OCC. CODE § 160.007(a)).

The Taylors contend that Baylor breached its physician retention policy by ignoring Dr. Courtney's many bad surgical outcomes. They rely on Dr. Carmody's excluded testimony to establish that Dr. Courtney had a "multitude of bad surgical outcomes" prior to Bryan's 2015 surgery. They argue that if Baylor had enforced its own policy to continuously monitor and evaluate the competency of its physicians, Dr. Courtney would not have had privileges at Baylor in 2015, and he would not have performed unnecessary and negligent surgeries on Bryan.

In his deposition testimony, Baylor's expert, Dr. Pate, opined that Baylor's medical staff bylaws and rules and procedures follow the procedures required by the Joint Commission. Baylor utilizes an Ongoing Professional Practice Evaluation (OPPE) in credentialing, and the MEC also evaluates the quality and appropriateness of medical care rendered to patients. Baylor provided the deposition testimony of Dr. Jimmy Laferney, Baylor's Vice President for Medical Staff Affairs, with respect to Baylor's policies and procedures for credentialing and retention of physicians. He described the process and documentation necessary to apply for privileges. Baylor's privileges are for two years—a physician must re-apply for privileges every two years. Dr. Laferney confirmed that as part of its peer review process, Baylor conducts ongoing professional performance evaluations for every physician, in which every patient encounter is considered. He testified that Dr. Courtney was one

of the first physicians to be granted privileges at Baylor Frisco. He identified the delineation of privileges documentation showing that Dr. Courtney was credentialed and granted privileges to perform spine surgery. He also identified documentation showing that Dr. Courtney's privileges were renewed every two years. He verified that Dr. Courtney had privileges to conduct spine surgery at Baylor at the time of Bryan's surgery.

The Taylors argue that a fact issue exists because Baylor has no proof that Dr. Courtney was peer reviewed in accordance with Baylor's credentialing policies. They point to Dr. Pate's deposition testimony that he had no proof Dr. Courtney was peer reviewed in accordance with Baylor's policies. However, the absence of proof of peer review does not create some evidence that there was no peer review. *See City of Keller*, 168 S.W.3d at 813. In his deposition, Dr. Pate discussed Baylor's peer review policies and stated that he believed Baylor was monitoring Dr. Courtney's surgeries.

The Taylors also rely on Dr. Burton's testimony that Baylor breached its standard of care by failing to provide quality assurance on Dr. Courtney's practice; however, Dr. Burton testified in his deposition that he had no information about the specifics of the credentialing process for Dr. Courtney. He agreed that he had not seen any evidence that Baylor's credentialing, peer review, or ongoing performance evaluations were in any way biased. He admitted he had not reviewed any of the Baylor medical staff bylaws or policies and procedures. Nor did he recall reviewing

the depositions of Dr. Fitzgerald, Dr. Laferney, or Jeff Andrews with respect to peer review and quality review. When asked if he knew if Baylor had a credentialing or peer-review process for its physicians with staff privileges, Dr. Burton stated: "I would assume that it did. It's required by the certifying governmental authority." He also stated that based on the fact that Baylor is still in business, Baylor must be conducting ongoing professional performance evaluations of its physicians with staff privileges to the satisfaction of the governmental agencies.

The Taylors did not produce any evidence that Baylor acted with malice in credentialing Dr. Courtney. Further, they did not produce any admissible summary judgment evidence raising a genuine issue of material fact that Baylor breached its standard of care for credentialing Dr. Courtney. *See* TEX. R. CIV. P. 166a(i). Accordingly, the trial court did not err in granting summary judgment with respect to this issue.

### 5. Gross Negligence

In its motions for summary judgment, Baylor argued that there was no evidence supporting either the objective element or the subjective element of a gross negligence claim.[12] Baylor asserted there is no evidence it intended to harm Bryan. It urged that when viewed objectively at the time of its care and treatment, there was

---

[12] "Gross negligence" is statutorily defined as an act or omission: "(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11).

no evidence that any alleged act or omission of Baylor involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11)(A). Also, it urged there was no evidence of any alleged act or omission concerning which Baylor had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Bryan. *See id.* §41.001(11)(B).

In response, the Taylors argued that Baylor had actual subjective awareness Dr. Courtney was harming patients but Baylor proceeded with conscious indifference, repeatedly ignoring its own policies to protect the rights, safety, and welfare of its patients. The Taylors' evidence of Baylor's gross negligence consisted of Dr. Carmody's excluded testimony. Without this evidence, the Taylors have no evidence to create a fact issue.

Further, our conclusions above—that Baylor did not breach its standards of care as to the Taylors—are even more damaging to the Taylors' gross negligence claim. Other than in worker's compensation cases, a finding of ordinary negligence is a prerequisite to a finding of gross negligence. *See Ware v. Cyberdyne Sys., Inc.*, No. 05-10-01080-CV, 2012 WL 376671, at * 4 (Tex. App.—Dallas Feb. 7, 2012, no pet.) (mem. op.) (citing *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 395 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). Here, we conclude the trial court properly granted summary judgment on the Taylors' gross negligence claim because summary judgment was proper on their predicate negligence claims. *See Sonic Sys.*

–21–

*Int'l*, 278 S.W.3d at 394–95 (where party was entitled to summary judgment on negligence claim, party was also entitled to summary judgment on gross negligence claim); *Seaway Prods. Pipeline Co. v. Hanley*, 153 S.W.3d 643, 659 (Tex. App.—Fort Worth 2004, no pet.) (because appellant failed to show some evidence of negligence, appellant was not entitled to recover for gross negligence).

### III. Conclusion

We affirm the judgment of the trial court.

/Bill Pedersen, III//
200352f.p05

BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRYAN TAYLOR AND MELISSA
TAYLOR, Appellants

No. 05-20-00352-CV     V.

BAYLOR SCOTT & WHITE
MEDICAL CENTER-FRISCO,
Appellee

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-16-12792.
Opinion delivered by Justice
Pedersen, III. Justices Osborne and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Baylor Scott & White Medical Center-Frisco recover its costs of this appeal from appellants Bryan Taylor and Melissa Taylor.

Judgment entered this 10th day of February, 2022.